[Cite as *State v. Goldsmith*, 2015-Ohio-261.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 13CA116 |
| DARNELL L. GOLDSMITH | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:  Appeal from the Richland County Common
Pleas Court, Case No. 2013 CR0451D

JUDGMENT:  Affirmed

DATE OF JUDGMENT ENTRY:  January 15, 2015

APPEARANCES:

For Plaintiff-Appellee                       For Defendant-Appellant


JAMES J. MAYER, JR.                       RANDALL E. FRY
Prosecuting Attorney                       10 West Newlon Place
Richland County, Ohio                       Mansfield, Ohio 44902

By: JOHN C. NIEFT
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Hoffman, P.J.*

{¶1}    Defendant-appellant Darnell L. Goldsmith appeals his conviction entered by the Richland County Court of Common Pleas on two counts of burglary and one count of possession of criminal tools.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    About 1:00 a.m., on the morning of July 8, 2013, the victim herein, K.S., was sleeping on a couch in her living room at 76 Penn Avenue where she lives with her husband. K.S. was startled awake by a man standing across the room from her. He took a couple steps toward her stating, "Don't say anything and I won't hurt you." When he saw bottles of medications near the love seat across from her, he told K.S. he was taking her medications. K.S. screamed for her husband and ran upstairs. The burglar then ran out the back door. K.S. called 911 to report the home invasion, and police responded in minutes. K.S. described the burglar as wearing a black sweat jacket, pants and a black stocking cap.

{¶3}    Shortly thereafter, Officer Rietschlin of the Mansfield Police Department observed Appellant walking across Park Avenue West, 4 or 5 blocks from K.S.'s house on Penn Avenue. Appellant was wearing dark long sleeved clothing generally matching the description of the burglar. The clothing was noted as being out of season for the weather. Officer Rietschlin exited his vehicle, and Appellant then proceeded in approaching Officer Rietschlin. The officer asked Appellant if he would consent to a pat down search, and Appellant agreed to the search.  Officer Rietschlin found a black stocking cap, a pair of gloves, a small flashlight and a screwdriver in Appellant's jacket pockets. Appellant told the officer he had just found these four items. Another officer

brought K.S. to the scene, a spotlight was turned on Appellant's face and K.S. identified Appellant as the person who was in her house during the home invasion.

{¶4} Appellant later filed a notice of alibi stating he was walking home from his mother's house to his baby's mother's house on King Street when Officer Rietschlin stopped him. Subsequently, while being held in the jail pending trial, he engaged in a recorded phone call with Pastor Mackey, in which he admitted to being at K.S.'s house on the evening in question.

{¶5} On August 12, 2013, Appellant was indicted by the Richland County Grand Jury on two counts of burglary, both felonies of the second degree, in violation of R.C. 2911.12(A)(1) and (A)(2); and one count of possession of criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree.

{¶6} On October 8, 2013, Appellant filed a motion to suppress evidence. A hearing on the motion was held on October 22, 2013. Appellant argued the items discovered on his person in the initial pat down should be suppressed because the pat down was improper. The trial court denied the motion to suppress.

{¶7} Appellant waived his right to a jury trial, and the matter proceeded to a bench trial on December 5, 2013. The trial court found Appellant guilty on all counts. The trial court imposed a total prison term of seven years incarceration after the two burglary counts were merged as allied offenses.

{¶8} Appellant appeals, assigning as error:

{¶9} "THE APPELLANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS THE TRIAL COUNSEL ASKED QUESTIONS CONCERNING TESTIMONY GIVEN BY WITNESSES AT A

PRELIMINARY HEARING WITHOUT HAVING A TRANSCRIPT OF THE PRELIMINARY HEARING

{¶10} "THE APPELLANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS THE TRIAL COUNSEL DID NOT FILE A MOTION TO SUPPRESS THE OUT OF COURT IDENTIFICATION OF THE APPELLANT

{¶11} "THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS BASED THAT [SIC] ON THE INITIAL POLICE STOP OF THE APPELLANT VIOLATED THE APPELLANT'S FOURTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION ARTICLES I AND XIV."

I.& II.

{¶12} Appellant's first and second assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

{¶13} Appellant asserts he was denied the effective assistance of trial counsel. The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. ( *State v. Lytle* [1976], 48 Ohio St.2d 391, 2

O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶14} Initially, Appellant alleges his trial counsel was ineffective in failing to cross- examine K. S., the victim herein, regarding her alleged prior inconsistent statements. Counsel did not attempt to impeach K.S. using the preliminary hearing transcript or the police report.  Appellant specifically focuses on statements regarding the number and names of medications taken from the home during the night of the incident.

{¶15} Upon review, we find this issue ancillary to the issue before the trial court as to whether Appellant committed the offense of burglary.  The specific names and indications of the medications, as well as the victim's recollections thereof, are not at issue herein.  Further, her exact recollection of the same does not adversely reflect on K.S.'s credibility. The record before this Court does not affirmatively demonstrate any inconsistencies existed.

{¶16} Accordingly, we find Appellant has not established the outcome of the trial would have been otherwise had trial counsel cross-examined K.S. as to her alleged prior inconsistent statements on the issue. Further, we note, a transcript of the preliminary hearing was not made a part of the record on appeal.  Therefore, Appellant cannot establish prejudice as a result thereof.

{¶17} Appellant further maintains his trial counsel was ineffective in failing to move the trial court to suppress the out-of-court identification of Appellant by K.S., the victim herein.  Specifically, Appellant asserts the motion would have allowed trial counsel to present evidence as to whether there was a basis to suppress the in-court identification. Appellant maintains at the hearing on the motion to suppress, trial counsel would have had the opportunity to present evidence to show the circumstances surrounding the out-of-court identification were not proper and violated the due process afforded to Appellant.

{¶18} Appellant does not articulate a basis for suppressing the out-of-court identification, nor does Appellant establish the outcome of the trial would have been otherwise but for the alleged error of counsel. Based upon the victim's testimony, we find it unlikely the in-court identification was so impermissibly unreliable so as to warrant exclusion.  Accordingly, we find Appellant has not established prejudice as a result of counsel's performance.

{¶19}  The first and second assignments of error are overruled.

III.

{¶20}  In the third assignment of error, Appellant maintains the trial court erred in denying Appellant's October 8, 2013 motion to suppress the arrest herein on the grounds the officer who approached Appellant did not have probable cause to do so.

{¶21}  There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio

St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.*

**{¶22}** The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. Without a search warrant, a search is per se unreasonable unless it falls under a few established exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Once the defendant shows the search was warrantless, the burden shifts to the state to show it was permissible under one of the exceptions. Id. Consent is one exception to the warrant requirement. If an individual voluntarily consents to a search, then no Fourth Amendment violation occurs. *Schneckloth v. Bustamante,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

**{¶23}** The law within the State of Ohio recognizes three types of police-citizen encounters. The three types of encounters are consensual encounters, *Terry* stops, and

arrests. *State v. Stonier,* 5th Dist. Stark No. 2012 CA 00179, 2013-0hio-2188, 41; *citing State v. Taylor,* 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60 (2nd Dist.1995). A consensual encounter occurs when a police officer approaches a citizen in public, engages that person in conversation, requests information, and that person is free to refuse to answer and walk away. *Id.* A consensual encounter does not implicate the Fourth Amendment's protection unless the police officer has in some way restrained the person's liberty by a show of authority or force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Taylor,* at 747. An officer's request to examine a person's identification or search a person's belongings does not make an encounter nonconsensual. *Florida v. Rodriguez,* 469 U.S. 1, 4-6, 105 S.Ct. 308 (1984); *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382 (1991). Additionally, the request to conduct a pat-down does not render an encounter non-consensual. *State v. Hardin,* 2nd Dist. Montgomery No. 20305, 2005-0hio-130, 19- 20.

**{¶24}** A *Terry* stop is an investigatory detention. Such a stop is valid if the officer has reasonable and articulable suspicion of criminal activity. *Taylor* at 749. For such a stop to be valid, the officer must be able to point to specific facts when coupled with reasonable inferences from those facts to reasonably warrant the intrusion. The stop "must be viewed within the totality of the circumstances" presented to the officer at the time. *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044, (1980), paragraph one of syllabus. "An officer need not shrug his shoulders at suspected criminal activity because he lacks probable cause to arrest; rather a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo while obtaining more information may be reasonable in light of the facts known to the officer at the time." *Freeman,* at

295-296; *citing Adams v. Williams,* 407 U.S. 143, 145-146, 92 S.Ct. 1921 (1972) (internal citations removed).

{¶25} An officer can conduct a limited protective search for concealed weapons when the officer has reasonably concluded the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others. *State v. Evans,* 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). The officer does not need to be certain the person has a weapon on them to initiate a pat down. *State v. Smith,* 56 Ohio St.2d 405, 384 N.E.2d 280 (1978). Rather, the standard by which the officer is judged is that of a reasonably prudent man under the circumstances, who would be warranted in the belief his safety was in danger. *Id.* at 407.

{¶26} The only evidence presented at the suppression hearing was the testimony of Mansfield Police Officer Jacob Rietschlin. Officer Rietschlin testified he received a call regarding a burglary at 76 Penn. Ave. in progress around 1:00 a.m. [Suppression Transcript 6.] He stopped in a high crime area of Park Avenue and Sherman, where there were not many people about. [Transcript 7-8]. The officer heard over the radio the suspect was a black male, around 6 feet tall, wearing a dark jacket and dark pants. [Transcript at 7.] Officer Rietschlin saw Appellant crossing Park Avenue and observed he resembled the description of the individual involved in the burglary. He was heading away from the scene of the crime, and was four to five blocks away. He was spotted walking rapidly away from the incident location about five minutes after the incident first came out on the radio. [Transcript at 7-10, 15, 19.] The officer pulled over and exited his vehicle. Appellant approached the officer. Officer Rietschlin informed Appellant he matched the description of a suspect in a burglary, and then asked

Appellant to consent to a pat down. Appellant complied without objection. [Transcript at 10-12]. During the pat down, Officer Rietschlin found a stocking hat, gloves, a small flashlight, and a screwdriver in Appellant's jacket pockets. [Transcript at 13.] Appellant was dressed oddly for the warm night and gave no reason for wearing weather-inappropriate clothes. Appellant claimed to have found the items.

{¶27} The trial court overruled the motion to suppress, finding Appellant was patted down as part of a consensual encounter. We agree. Appellant initiated the encounter with Officer Rietschlin as he approached the officer, he consented to the pat down search. The evidence does not demonstrate Appellant was not free to leave or the officer in anyway detained Appellant.

{¶28} Assuming arguendo the stop at issue should be classified as a *Terry* stop, we find the officer had enough evidence to demonstrate reasonable, articulable suspicion to stop Appellant. Appellant was observed four to five blocks from the scene of the burglary, moving away from the residence only five minutes after the burglary occurred. Appellant matched the description provided by the victim of the crime, and was wearing weather inappropriate attire at the time. Appellant was a black male, around six feet tall, and dressed in a dark jacket zipped up and dark jeans - matching the description of the perpetrator. The evidence introduced at the suppression hearing would constitute reasonable and articulable facts justifying a *Terry* stop to initiate further investigation.

{¶29} The third assignment of error is overruled.

{¶30} The judgment entered by the Richland County Court of Common Pleas overruling the motion to suppress is affirmed.

By: Hoffman, P.J.

Gwin, J. and

Wise, J. concur